1

2

3

| FILED | ENTERED |
|---|---|
| MAR – 4 2009 | MAR – 4 2009 |
| CLERK U.S. BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA BY _____ Deputy Clerk | CLERK, U.S. BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA BY _____ Deputy Clerk |

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

In re:                         )    Case No.  ND-08-10564-RR
                               )
                               )    Chapter 7
                               )
WILLIAM SCOTT, JR.,            )    MEMORANDUM OPINION
                               )
            Debtor.            )    Hearing:  Jan. 14, 2009
                               )    Time:     10:00 a.m.
                               )    Place:    Courtroom 201
                               )              U.S. Bankruptcy Court
                               )              1415 State Street
_____)              Santa Barbara, CA

RIBLET, Bankruptcy Judge:


    The issue presented is whether the debtor may utilize 11

U.S.C. § 522(f)(1) to avoid a Family Law Attorney's Real Property

Lien recorded, according to California law, by his former

spouse's family law counsel.  I conclude that the debtor may not

avoid such a lien and, accordingly, deny his motion.

## I.  FACTS

    Debtor filed his voluntary chapter 7 petition on March 19,

2008.  The initially filed schedules included Schedule A, listing

the debtor's interest in real property located at 6950 Solano

Drive in Camarillo, California.  Schedule A reflected a current

1   value of $950,000, subject to a secured claim of $1,095,084.

2   Schedule C, filed March 19, 2008, did not claim a homestead

3   exemption.   On June 18, 2008, amended schedules were filed,

4   including an amended Schedule C which claimed a homestead

5   exemption under Cal. Code of Civ. Pro. § 703.140(b)(5) in the

6   amount of $25 in the Solano Drive residence.  No objections to

7   the debtor's claims of exemption have been filed.

8       Long before the commencement of debtor's case, dissolution

9   proceedings between the debtor and his then wife commenced in the

10  Fall of 2005.  Mrs. Scott engaged Ferguson Case Orr Paterson LLP

11  ("Ferguson Case" or "claimant") to represent her in the

12  dissolution proceedings.   Ferguson Case recorded its Family Law

13  Attorney's Real Property Lien ("FLARPL") in accordance with

14  California law[1] on April 10, 2007, in the amount of $40,000

15  against Mrs. Scott's community property interest in the Solano

16  Drive residence.

17      On March 10, 2008, the family law court entered its judgment

18  of dissolution and awarded debtor the Solano Drive residence,

19  subject to the encumbrances thereon.   The dissolution judgment

20  ordered property division as set forth in the parties' Marital

21  Settlement Agreement.   The Marital Settlement Agreement provided:

22      The following assets . . . are agreed to be Husband's .
        . .  B. The former family residence located at 6950
23      Solano Drive, Camarillo, CA, subject to the
        encumbrances on said property, including but not
24      limited to the first mortgage, the equity line of
        credit and any wrap-around loan.

25

26

_____

27  [1] Cal. Fam. Code §2033 (West 2009).

28                              2

1      Additionally, the Marital Settlement Agreement included

2  language specifically referencing the FLARPL, stating:

3          There is currently a Family Law Real Property Lien
           in place in favor of Ferguson, Case, Orr Paterson,
4          et.al., secured by the former family residence in the
           amount of $40,000.  The court has reserved jurisdiction
5          over the issue of whether the family law real property
           lien should be purged or allowed to remain in place.
6          This reservation of jurisdiction still exists and the
           subject is still before the court. . .  The parties
7          specifically stipulate that regardless of whether
           Ferguson, Case, Orr Paterson, et.al. is successful in
8          obtaining funds due to the Family Law Real Property
           Lien, neither party will be entitled to nor responsible
9          for reimbursement to the other party.  Each party
           specifically warrants that he or she will not seek
10         repayment from the other party for any fees and/or
           distributions associated with the Family Law Real
11         Property Lien.

12     Two months later, and after the commencement of this chapter

13  7 case, the family law court addressed the reserved issues

14  relative to the FLARPL.  By way of order entered on May 13, 2008,

15  the family law court ordered as follows:

16         Petitioner's motion to expunge the Family Law
           Attorney's Real Property Lien ("FLARPL") is denied in
17         full.  The court's prior assertion of a reservation of
           jurisdiction over the issue, stated in the prior Order,
18         issued on October 12, 2007, is dissolved.  Jurisdiction
           is hereby terminated over the issue and the FLARPL,
19         which is recorded against the 6950 Solano Drive,
           Camarillo, California property, remains in full force
20         and effect.

21     On June 6, 2008, claimant Ferguson Case filed a proof of

22  claim in the debtor's bankruptcy case in the amount of $55,000,

23  of which $40,000 was claimed as secured based on the FLARPL.  In

24  an Addendum to Proof of Claim, Ferguson Case asserts, "This lien

25  encumbers Annette Scott's interest in the community property real

26  property located at 6950 Solano Drive . . ."

27

28                                 3

1    On November 3, 2008, the debtor filed the instant motion to
2  avoid the lien of Ferguson Case in the amount of $40,000.

3                    **II.   JURISDICTION**

4    The bankruptcy court has subject-matter jurisdiction
5  pursuant to 28 U.S.C. § 1334 over this core proceeding under 28
6  U.S.C. § 157(b)(2)(B).

7                      **III.   ISSUES**

8    (1) Whether claimant's FLARPL fixed on an interest of the
9  debtor.

10   (2) Whether the FLARPL is a statutory or a judicial lien.

11                    **IV.   DISCUSSION**

12 **A.   Did the FLARPL fix on an interest of the debtor?**

13   Ferguson Case argues that the debtor cannot avoid the FLARPL
14 because it was fixed on his former wife's interest in the
15 property before the debtor obtained his new sole ownership
16 interest in the property subject to the FLARPL.  Ferguson Case
17 relies on the holding of Farrey v. Sanderfoot, 500 U.S. 291, 299,
18 111 S.Ct. 1825, 1830 (1991), that "the critical inquiry remains
19 whether the debtor ever possessed the interest to which the lien
20 fixed, before it fixed."  Claimant reasons that the debtor did
21 not possess any interest in Mrs. Scott's community interest in
22 the Solano Drive residence at the time the lien attached to Mrs.
23 Scott's community interest.  Claimant also cites to In re
24 Donovan, 137 B.R. 547 (Bankr. S.D. Fla. 1992), which held that
25 the debtor wife could not avoid a lien on real property in favor
26 of the non-debtor husband's attorney because the lien fixed on
27

28                            4

1  the non-debtor husband's interest in the residence prior to the
2  debtor obtaining the entire interest.

3       The debtor, on the other hand, argues that the FLARPL fixed
4  on the Solano Drive community property of the debtor in April
5  2007, upon recordation, and because debtor owned a community
6  property interest in the residence at that time, the lien fixed
7  on an interest of the debtor.  Debtor relies on Law Offices of
8  Moore & Moore v. Stoneking (In re Stoneking), 225 B.R. 690 (9th
9  Cir. BAP 1998).

10      The U.S. Supreme Court in Farrey held that "unless the
11 debtor had the property interest to which the lien attached at
12 some point before the lien attached to that interest, he or she
13 cannot avoid the fixing of the lien under the terms of
14 §522(f)(1)."  Farrey, 500 U.S. at 296.  "[I]t is settled that a
15 debtor cannot use § 522(f)(1) to avoid a lien on an interest
16 acquired after the lien attached."  Id., at 299 (citations
17 omitted).  "[T]he critical inquiry remains whether the debtor
18 ever possessed the interest to which the lien fixed, before it
19 fixed.  If he or she did not, § 522(f)(1) does not permit the
20 debtor to avoid the fixing of the lien on that interest."  Id.

21      Relying on Wisconsin state law and the fact that the parties
22 held title in joint tenancy prior to the divorce judgment, the
23 U.S. Supreme Court determined that the divorce decree
24 extinguished both parties' pre-existing undivided half interests.
25 The same decree awarded husband his fee simple interest and
26 simultaneously granted a lien to the wife.  "[Husband] took the
27
28                                    5

1 │ interest and the lien together, as if he had purchased an already

2 │ encumbered estate from a third party.  Since [husband] never

3 │ possessed his new fee simple interest before the lien 'fixed,'

4 │ §522(f)(1) is not available to void the lien."  Id., at 300.[2]

5

6 │      [2] In Farrey, the Wisconsin court granted a judgment of
   │ divorce and awarded the family home to the husband.  To equalize
7 │ division of the marital estate, the court ordered husband to pay
   │ wife $29,208.44, half the difference in the value of their net
8 │ assets.  To secure the award, the decree provided that wife was
   │ to have a lien against the real estate in the amount of money due
9 │ her, and that the lien would remain attached to the real property
   │ until the total amount of money had been paid in full.  The U.S.
10 │ Supreme Court determined that the debtor husband was not
   │ permitted to use §522(f)(1) to avoid wife's lien, reasoning that:
11

12 │      [T]he lien could not have fixed on [husband's] pre-
   │      existing undivided half interest because the divorce
13 │      decree extinguished it.  Instead, the only interest
   │      that the lien encumbers is debtor's wholly new fee
14 │      simple interest.  The same decree that awarded
   │      [husband] his fee simple interest simultaneously
15 │      granted the lien to [wife].  As the judgment stated, he
   │      acquired the property "free and clear" of any claim
16 │      "except as expressly provided in this [decree]."  . . .
   │      [Husband] took the interest and the lien together, as
17 │      if he had purchased an already encumbered estate from a
   │      third party.  Since [husband] never possessed his new
18 │      fee simple interest before the lien "fixed," §522(f)(1)
   │      is not available to void the lien.
19

20 │      The same result follows even if the divorce decree did
   │      not extinguish the couple's pre-existing interests but
21 │      instead merely reordered them.  The parties' current
   │      position notwithstanding, it may be that under
22 │      Wisconsin law the divorce decree augmented [husband's]
   │      previous interest by adding to it [wife's] prior
23 │      interest.  If the court in exchange sought to protect
   │      [wife's] previous interest with a lien, §522(f)(1)
24 │      could be used to undo the encumbrance to the extent the
   │      lien fastened to any portion of [husband's] previous
25 │      surviving interest.  This follows because [husband]
   │      would have possessed the interest to which that part of
26 │      the lien fixed, before it fixed.  But in this case, the
27 │      divorce court did not purport to encumber any part of

28                                    6

1    In <u>Donovan</u>, 137 B.R. 547, during the parties' divorce, the
2  husband's attorney requested and was granted a charging lien
3  against the husband's one-half interest in the residence.  The
4  charging lien was recorded.  Subsequently, the parties entered
5  into a settlement wherein the husband transferred his undivided
6  one-half interest in the residence to the debtor wife, subject to
7  the charging lien of his counsel.  After obtaining court approval
8  of the settlement, the husband executed a quit claim deed which
9  provided that the conveyance was subject to the charging lien of
10 the attorney.

11   Five years later, the debtor wife and her new husband filed
12 a chapter 7 petition, claiming a homestead exemption in the
13 residence.  They moved to avoid the charging lien claiming that
14 it impaired their homestead exemption.   The creditor opposed the
15 motion, asserting that the lien attached solely to the ex-
16 husband's one-half interest prior to the debtor wife's
17 acquisition of the entire interest in the residence.
18 Alternatively, the creditor argued his charging lien was not a
19

20           [husband's] previous interest even on the assumption
21           that state law would deem that interest to have
             survived.  The decree instead transferred [wife's]
22           previous interest to [husband] and, again
             simultaneously, granted a lien equal to that interest
23           minus the small amount of personal property she
             retained. [Husband] thus would still be unable to avoid
24           the lien in this case since it fastened only to what
             had been [wife's] preexisting interest, and this
25           interest [husband] would never have possessed without
26           the lien already having fixed.

27 <u>Farrey</u>, 500 U.S. at 299-300.

28                              7

1  judicial lien and therefore not avoidable.

2      The Donovan court, applying Farrey, determined that since
3  the creditor's lien fixed to the property before the debtor
4  acquired her interest, the lien did not fix on the debtor's
5  interest in the property.  Thus, the debtor could not avoid the
6  creditor's lien.

7      In Stoneking, 225 B.R. 690, the debtor sought to avoid the
8  judicial lien of a law firm which had represented the debtor's
9  former spouse in divorce proceedings.  The Ninth Circuit
10 Bankruptcy Appellate Panel held that the debtor, who now had sole
11 ownership of his residence, could avoid the judicial lien imposed
12 on his residence while he was holding a community property
13 interest in it.  The debtor alleged that his former spouse
14 executed a quitclaim deed after entry of the fee award to the
15 firm, but before the abstract of judgment was recorded.  The
16 court observed that there was nothing in the record to support
17 that allegation, further noting, "In any event, at the time the
18 Superior Court imposed the lien on the community property
19 including the Residence . . . Debtor held a community property
20 interest in the Residence."  Stoneking, 225 B.R. at 691.

21     The Panel distinguished its facts from those of Farrey,
22 noting that unlike Farrey, the judicial lien attached to the
23 debtor's community property, which interest the debtor held
24 before the lien attached.  As a result of that distinction, the
25 debtor could avoid the lien.  The Panel limited the application
26 of Farrey to liens created simultaneously with the creation of

27

28                                  8

1  the new property interests.

2      The Panel further reasoned against making an arbitrary
3  distinction between a debtor who obtains a divorce after the lien
4  is affixed and a debtor who remains married after the lien is
5  affixed:

6          While a debtor may not avoid a lien that attached
           before he held *any* interest in the property, it does
7          not necessarily follow that a debtor cannot avoid a
           lien merely because his property interests were
8          augmented after attachment of the lien.  If a debtor
           could have avoided such a lien on community-held real
9          property pursuant to section 522(f)(1) before acquiring
           sole ownership of the property, that debtor should not
10         lose the right to avoid that same lien after acquiring
           sole ownership.  Otherwise, a judgment creditor whose
11         debtor happens to obtain a divorce after the lien is
           affixed on community property is fortuitously excluded
12         from the lien avoidance scope of section 522(f)(1),
           while a creditor whose debtor remains married after the
13         lien is affixed on real property is subject to having
           its lien avoided under that section.  There is no basis
14         in section 522(f)(1) for such an arbitrary distinction.

15  Stoneking, 225 B.R. at 695.

16      Just as the Stoneking Panel found factual distinctions
17  between the facts before it and those in Farrey, there are
18  significant factual distinctions between the facts of this case
19  and those of Stoneking, making this case more closely aligned
20  with Farrey.  The creditor law firm in Stoneking obtained an
21  order for recovery of its fees against the debtor and *against the*
22  *community property of both parties*.  The Stoneking lien was not
23  imposed under statute.  Rather, the recorded abstract of judgment
24  was clearly a judicial lien, as it resulted from a court order.

25      In contrast, in the facts presented here, during the time
26  that the residence was held as community property, the Ferguson

27

28                               9

1 Case lien was recorded solely against Mrs. Scott's undivided
2 interest in the community property.  The lien was recorded as a
3 Family Law Attorney's Real Property Lien under Cal. Fam. Code
4 §2033, which specifically provides that such encumbrance
5 "attaches only to the encumbering party's interest in the
6 community real property."

7     In the parties' Marital Settlement Agreement, the former
8 family residence was awarded to the debtor/husband "subject to
9 the encumbrances on said property, including but not limited to
10 the first mortgage, the equity line of credit and any wrap-around
11 loan."  Mrs. Scott was awarded an equalizing payment of $6,000,
12 payable at $1,000 per month.  Additionally, the Marital
13 Settlement Agreement included language specifically referencing
14 the FLARPL, stating that the family law court had reserved
15 jurisdiction over the issue of whether the FLARPL should be
16 purged or allowed to remain in place.  The family law court
17 subsequently denied the debtor husband's motion to expunge the
18 FLARPL and ordered that "the FLARPL, which is recorded against
19 the 6950 Solano Drive, Camarillo, California property, remains in
20 full force and effect."

21     Thus, the circumstances of this case are much more akin to
22 those of Farrey, wherein the subject lien never encumbered the
23 debtor's pre-existing undivided one-half interest.  The lien in
24 Farrey, which was granted in favor of the wife to secure payment
25 of an equalizing payment, was granted simultaneously with the
26 awarding of the fee simple interest to the debtor husband.

27

28                            10

1  "[Husband] took the interest and the lien together, as if he had
2  purchased an already encumbered estate from a third party.  Since
3  [husband] never possessed his new fee simple interest before the
4  lien 'fixed,' § 522(f)(1) is not available to void the lien."
5  Farrey, 500 U.S. at 300.  Here, the FLARPL never encumbered the
6  debtor's pre-existing community property interest because it
7  attached only to the encumbering party's (Mrs. Scott's) interest
8  in the community property.  Cal. Fam. Code § 2033.  As in Farrey,
9  Debtor here took his interest and the lien together, as if he
10 purchased an already encumbered estate from a third party.  Since
11 debtor never possessed his new fee simple interest before the
12 lien fixed, § 522(f) is not available to void the lien.

13      The facts here are also strikingly similar to those in
14 Donovan wherein the debtor wife acquired her ex-husband's
15 interest *subject to* the creditor's lien.  Because the lien fixed
16 to the former husband's one-half interest prior to the debtor's
17 acquisition of the husband's interest, the lien did not fix on
18 the debtor's interest.  The debtor could not avoid the lien under
19 §522(f).  Donovan, 137 B.R. at 550.

20      Moreover, under the unambiguous language of the California
21 statute, the FLARPL could attach only to Mrs. Scott's community
22 interest.  "This encumbrance shall be known as a 'family law
23 attorney's real property lien' and attaches only to the
24 encumbering party's interest in the community real property."
25 Cal. Fam. Code § 2033.  Simply because debtor had a community
26 interest in the community real property does not mean that the
27

28                                  11

1  lien attached to *his* community interest in the property.  Rather,
2  the lien attached to Mrs. Scott's community interest only.
3  Because the Ferguson Case FLARPL did not fix on an interest of
4  the debtor in the residence at the time it was recorded, the
5  debtor may not utilize 11 U.S.C. § 522(f)(1) to avoid the lien.

6  B.    **Is the FLARPL a statutory or a judicial lien?**

7         There are no cases determining whether a California FLARPL
8  is a statutory lien or a judicial lien.

9         Under the provisions of Cal. Fam. Code § 2033, a FLARPL
10 attaches only to the encumbering party's interest in the
11 community property and does not require any subsequent action by
12 the Family Law court to be effective.  If the attorney asserting
13 the lien fails to comply with the notice requirements (including
14 specifying the amount of attorney fees to be secured by the lien)
15 of Cal. Fam. Code § 2033, the lien will be invalid *ab initio*.
16 Toscana v. Toscana, 2002 WL 226124 (2002); and Kipperman v.
17 Sutherland (In re Bush), 356 B.R. 28 (Bankr. S.D. Cal. 2006)
18 (Notice of the § 2033 lien must be served personally on the other
19 party at least 15 days before recordation of the encumbrance).[3]

20

21        [3] In Bush, the chapter 7 trustee filed an adversary
22 complaint against the attorney who represented the debtor in
   prepetition dissolution proceedings, seeking to avoid a charging
23 lien, a judicial lien, and a FLARPL.  The Bankruptcy Court in the
   Bush case did not decide whether a FLARPL was a statutory lien
24 because the attorney in that case did not record a FLARPL.
   Rather, she filed an All Inclusive Deed of Trust and Assignment
25 of Rents.  There was no dispute that the document was recorded,
   thus giving constructive notice to the chapter 7 trustee.  The
26 court *sua sponte* granted summary judgment in favor of the
   attorney on the non-avoidance of the All Inclusive Deed of Trust.
27

28                              12

1        Cases interpreting other state attorney liens are
2   instructive.   The Eleventh Circuit determined that to the extent
3   an attorney's charging lien under Florida law was valid, it was
4   not a judicial lien and therefore not avoidable as impairing the
5   debtor's homestead.    Weed v. Washington (In re Washington), 242
6   F.3d 1320 (11th Cir. 2001).    The Eleventh Circuit reasoned that
7   the interest created by a valid attorney's charging lien arises
8   by operation of law when all the requirements of such a lien are
9   satisfied.

10       In In re Dubois, 2004 WL 343984 (Bankr. D. N.H. 2004), the
11  court addressed the issue of whether an attorney's claim for fees
12  under a New Hampshire statute was a judicial lien or a statutory
13  lien.   Because the attorney had not been paid from the equalizing
14  payment by the non-debtor spouse to the debtor, the attorney
15  sought enforcement in the superior court.   The superior court
16  entered an order determining that the attorney had an attorney's
17  lien under New Hampshire law against the debtor's 401(k) account
18  and ordered the debtor to make payments.   The debtor then filed a
19  chapter 7 petition and moved to avoid the attorney's lien.   After
20  discussing the definitions of security interest, judicial lien
21  and statutory lien, the bankruptcy court concluded that the
22  attorney's lien satisfied each and every element of the
23  definition of a statutory lien:   the lien arose solely under the
24  statute; it was not obtained through any judicial proceeding,
25  court order or agreement, but arose solely because of the
26  provisions of the statute; and no action by the court was
27
28                              13

1  necessary to create the lien.  Furthermore, the court rejected

2  the argument that resorting to the courts to perfect, enforce or

3  determine the nature or extent of the statutory lien transformed

4  the lien into a judicial lien.

5           [T]he statute does not authorize the superior court to
           create the lien itself.  In this case, the superior
6          court's order only confirmed the existence of the
           statutory lien and determined the amount and payment
7          terms for the lien.  Those actions were in furtherance
           of the enforcement of an existing lien, not the
8          creation of the lien.  Accordingly, the superior
           court's order of August 26, 2003 did not convert the
9          Creditor's statutory lien into a judicial lien.

10  Dubois, 2004 WL 343984, at *3.

11      Similarly, the Bankruptcy Court for the Western District of

12  Oklahoma held that an attorney's charging lien was statutory and

13  not included among the types of liens that can be avoided under

14  §522(f)(1)(A).  In re Bingham, 344 B.R. 648 (Bankr. W.D. Okla.

15  2006).  "An attorney's statutory charging lien which is properly

16  perfected before the client files for bankruptcy is a statutory

17  lien that cannot be avoided pursuant to 11 U.S.C. §522(f)(1)(A)."

18  Id., at 650 (citation omitted).

19      In In re O'Connell, 167 B.R. 928 (Bankr. D. Mont. 1994), the

20  chapter 7 debtor sought to avoid an attorney's lien of her former

21  dissolution attorney, contending that the attorney's lien was an

22  avoidable judicial lien.  The court determined that Montana's

23  statute governing attorneys' liens was a codification of the

24  common law attorney's charging lien.  The court determined that

25  under Montana law, the attorney's charging lien was based on a

26  statutory right, much like a mechanic's lien.  "Like a mechanic's

27

28                                  14

1  lien, an attorney's lien arises out of the statute, which creates

2  the lien, and even the enforcement of the lien by judgment does

3  not change the character of the statutory lien." <u>O'Connell</u>, 167

4  B.R. at 931, <u>citing</u> <u>Graffen v. City of Philadelphia</u>, 984 F.2d 91,

5  96 (3rd Cir. 1992).  The <u>O'Connell</u> court found the facts before

6  it parallel to those in <u>In re Sacco</u>, 99 B.R. 647 (Bankr. W.D. Pa.

7  1989), wherein the court held that an attorney's charging lien

8  under Pennsylvania law was not a judicial lien and could not be

9  avoided.  "An attorney's charging lien arises by operation of

10 law. . . . [N]o affirmative action is required to establish an

11 attorney's charging lien. . . [W]e hold that a properly

12 constituted attorney's charging lien is a secured debt which may

13 not be avoided pursuant to 11 U.S.C. § 522(f)(1)." <u>O'Connell</u>,

14 167 B.R. at 931, <u>citing</u> <u>Sacco</u>, 99 B.R. at 651-52.  The <u>O'Connell</u>

15 court concluded:

16         Since Congress has specifically limited § 522(f)(1)
           to judicial liens, the statutory lien of Bell trumps
17         the Debtor's motion to avoid Bell's attorney's lien. .
           .  I conclude Montana's attorney lien statute Section
18         37-61-420 creates a statutory lien as that term is
           defined in § 101(53) of the Bankruptcy Code which
19         cannot be avoided under § 522(f)(1).

20 <u>O'Connell</u>, 167 B.R. at 931.

21     A Family Law Attorney's Real Property Lien created under

22 Cal. Fam. Code § 2033 falls squarely within the definition of a

23 statutory lien.  A "statutory lien" is a lien "arising solely by

24 force of a statute on specified circumstances or conditions, . .

25 . but does not include security interest or judicial lien." 11

26 U.S.C. § 101(53).  On the other hand, a "judicial lien" is

27

28                                   15

1   "obtained by judgment, levy, sequestration, or other legal or

2   equitable process or proceeding." 11 U.S.C. § 101(36).

3        California's FLARPL statute provides as follows:

4        (a) Either party may encumber his or her interest in
         community real property to pay reasonable attorney's
5        fees in order to retain or maintain legal counsel in a
         proceeding for dissolution of marriage, for nullity of
6        marriage, or for legal separation of the parties. This
         encumbrance shall be known as a "family law attorney's
7        real property lien" and attaches only to the
         encumbering party's interest in the community real property.
8
         (b) Notice of a family law attorney's real property
9        lien shall be served either personally or on the other
         party's attorney of record at least 15 days before the
10       encumbrance is recorded. This notice shall contain a
         declaration signed under penalty of perjury containing
11       all of the following:

12       (1) A full description of the real property.

13       (2) The party's belief as to the fair market value of
         the property and documentation supporting that belief.
14
         (3) Encumbrances on the property as of the date of the
15       declaration.

16       (4) A list of community assets and  liabilities and
         their estimated values as of the date of the
17       declaration.

18       (5) The amount of the family law attorney's real
         property lien.
19
         (c) The nonencumbering party may file an ex parte
20       objection to the family law attorney's real property
         lien. The objection shall include a request to stay the
21       recordation until further notice of the court and shall
         contain a copy of the notice received. The objection
22       shall also include a declaration signed under penalty
         of perjury as to all of the following:
23
         (1) Specific objections to the family law attorney's
24       real property lien and to the specific items in the
         notice.
25
         (2) The objector's belief as to the appropriate items
26       or value and any documentation supporting that belief.

27

28                                16

1

2

3

(3) A declaration specifically stating why recordation of the encumbrance at this time would likely result in an unequal division of property or would otherwise be unjust under the circumstances of the case.

4

5

(d) Except as otherwise provided by this section, general procedural rules regarding ex parte motions apply.

6

7

(e) An attorney for whom a family law attorney's real property lien is obtained shall comply with Rule 3-300 of the Rules of Professional Conduct of the State Bar of California.

8

Cal. Fam. Code § 2033 (West 2009).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

A California FLARPL requires an agreement between the attorney and his client for the payment of fees in a dissolution proceeding.  The client can agree to encumber his or her interest in community property to secure payment of such fees.  The lien attaches only to the encumbering party's interest in the community real property.  To be valid, the statute requires a notice of the lien to be served personally or on the other party's attorney of record at least 15 days before recordation. The notice must contain a full description of the real property, the party's belief as to fair market value, encumbrances on the property at the time of the declaration, a list of community assets and liabilities with estimated values, and the amount of the attorney's lien.

24

25

26

27

Absolutely no intervention is required by the family law court to create a valid family law attorney's lien in community real property.  The statute sets forth a procedure for challenging such a lien by the non-encumbering party.

28

17

1    The debtor here unsuccessfully challenged the Ferguson Case

2  FLARPL.  The family law court denied his motion to expunge the

3  lien and ordered that the lien remain in full force and effect.

4  The state court did not create the lien, nor did the court

5  transform the lien into a judicial lien merely by determining

6  that the lien remained in full force and effect.

7

8    This Court having determined that the FLARPL is a statutory

9  lien, the Debtor may not attempt to utilize 11 U.S.C. § 522(f)(1)

10 to avoid it.

11                          **V.   CONCLUSION**

12    The debtor's motion to avoid the Ferguson Case FLARPL is

13 DENIED on two separate bases: first, the FLARPL is a statutory

14 lien and not avoidable under 11 U.S.C. § 522(f)(1); and second,

15 because the debtor here did not possess the interest being

16 attached at the time the FLARPL fixed (which fixed only on Mrs.

17 Scott's community property interest in the residence), the fixing

18 was not on the debtor's interest.  Accordingly, the Ferguson Case

19 FLARPL cannot be avoided under the specific provisions of 11

20 U.S.C. § 522(f)(1).

21

22

23 Dated: March 4, 2009                 _Robin Riblet_

24                                      Robin L. Riblet
25                                      United States Bankruptcy Judge

26

27

28                          18

| In re: Willian Scott, Jr. | | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NUMBER: ND-08-10564-RR |

### NOTE TO USERS OF THIS FORM:

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) <u>Memorandum Opinion</u>

_____ was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order.  As of <u>3/4/09</u>_____, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Richard J Bauer    rbauer@mileslegal.com
John H Kim    jkim@cookseylaw.com
Sandra McBeth    jwalker@mcbethlegal.com, CA65@ecfcbis.com
John Patton    jpatton@cookseylaw.com
United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

☑  Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☑  Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐  Service information continued on attached page

_____

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9021-1.1**

| In re: Willian Scott, Jr. | | |
| | CHAPTER: 7 | |
| | Debtor(s). | CASE NUMBER: ND-08-10564-RR |

**ADDITIONAL SERVICE INFORMATION** (if needed):

Gilbert B Weisman    notices@becket-lee.com
William E Winfield    wwinfield@nchc.com

William E. Winfield, Esq.
NORDMAN CORMANY HAIR & COMPTON
1000 Town Center Drive, 6th Floor
P O Box 9100
Oxnard, CA  93031

Gregory W. Herring, Esq.
Ferguson Case Orr Paterson LLP
1050 South Kimball Road
Ventura, CA 93004

Sandra K. McBeth
Ch 7 Trustee
2450 Professional Parkway
Santa Maria, CA 93455

Office of the U.S. Trustee Region 16
21051 Warner Center Lane, Ste 115
Woodland Hills, CA 91367

Brian Fittipaldi, Esq.
Office of the U.S. Trustee
128 East Carrillo Street
Santa Barbara, CA 93101

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9021-1.1**